### In re WOOTEN.
### No. 5844.

District Court, W. D. Louisiana,
Monroe Division.
March 7, 1941.

C. T. Munholland, of Monroe, La., Supervising Conciliation Commissioner.

Harold Moses, of New Orleans, La., for Federal Land Bank.

466

DAWKINS, District Judge.

The Federal Land Bank of New Orleans filed a motion to dismiss the above case on the ground that the debtor had failed to carry out and complete the terms of an extension entered into with it and for the further reason that the debtor had been denuding the property of its timber, thereby impairing the security of the bank, and in addition, had executed a mineral lease upon the property, the proceeds of which he also converted to his own use, all without the knowledge or consent of the mortgagee and without authority from the court.

After reciting the circumstances surrounding the proceeding, its history and the evidence taken upon the motion to dismiss, the Commissioner pronounced conclusions and made recommendations as follows:

"The motion to dismiss the proceedings is predicated upon allegations that the debtor has committed depredations to the property mortgaged to Federal Land Bank of New Orleans in that he has been cutting cross ties, saw logs and pulp wood from the security of mover, Federal Land Bank of New Orleans, without consent of the Bank or the Court. The record clearly reflects both from the testimony of the debtor admitting the cutting of cross ties and from the testimony of Mr. Ransom, Field Representative of Federal Land Bank of New Orleans, that the debtor had cut at least nine cross ties from timber on the property. Mr. Ransom and Mr. W. S. Humphries both testified that in October, 1939, both of them went to the property and with the debtor inspected the premises, seeing thirteen fresh cut cross ties and evidence of timber cutting within five or six months from that date. Mr. Ransom testified that the debtor had cut pulp wood, which was delivered to the mill at Bastrop, Louisiana and certain saw logs were delivered to Critchett & Woods Lumber Company at Kelly, Louisiana.

"It was further shown that on July 15th, 1939 the debtor sold one-fourth of the minerals under forty acres of the property for a cash consideration of $100.00. The debtor admitted the sale and receipt of the consideration and could give no explanation why he had made the sale without seeking authority of creditors or of the Court. In this connection the Debtor admitted at the hearing that he had been instructed at the first meeting of creditors and on at least two occasions thereafter that he would not be permitted to alienate property or do anything therewith without specific authority of the Court, it being explained to him that the Court had tied the hands of his creditors and would not permit them to resort to their usual rights to enforce payment of obligations due by him to them and on the other hand would not permit him to alienate, mortgage or otherwise treat with his property to the prejudice of creditors and in no event without specific authority of the Court.

"While it is true that the debtor is a Negro and somewhat illiterate and without counsel, it is likewise true that he has the usual intelligence and understanding of the average man in his circumstances. Before he attempted execution of the mineral lease and mineral sales whereunder he received $———, knew that it was necessary to obtain authority of the Court to enter into the transactions and attended at least two hearings before me for that purpose. I am of the opinion that he thought he could make sale of the one-fourth of the minerals under the forty acres without discovery and obtain money which he needed at the time. However, the mineral sale does not seem to involve impairment of the security of Federal Land Bank of New Orleans as their mortgage antedates the sale and consequently primes it.

In view of the foregoing it appears to me that the debtor has not kept faith with his creditors and the Court and has seen fit to do such things as cut timber and alienate property which is not in keeping with the requirements of the Court and the spirit of the provisions of Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, and I conclude and recommend that the proceeding be dismissed.

"Rights should be reserved, however, to the debtor to file an amendment to his original petition for adjudication under subsection s of Section 75, reserving likewise the rights of creditors to oppose the adjudication. There is a legal proposition as to whether the debtor under the foregoing circumstances would have the right to be adjudicated bankrupt under sub-section s of Section 75.

"A copy of this report is this day being forwarded to the debtor and to counsel for Federal Land Bank of New Orleans with

advice that an order of dismissal will be presented to the Court at the expiration of ten (10) days from this date. Respectfully submitted."

This report was filed on January 22, 1941, and copies were furnished to the parties, including the debtor. No exceptions have been filed thereto, but in view of the fact that this debtor is a colored man and has not been represented by counsel, the court has carefully examined the report, including the evidence taken on the motion to dismiss and is of the view that the report should be adopted and the cause dismissed.

Proper decree should be presented.